UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TEAH AVERETT, CINDY MALLESS, EUGENE PARSLEY, REBECCA PARSLEY, and CRYSTAL WHALEN, *on behalf of themselves and all others similarly situated*,<br><br>*Plaintiffs*,<br><br>*vs.*<br><br>METALWORKING LUBRICANTS CO.,<br><br>*Defendant*. | No. 1:15-cv-01509-JMS-MPB |

# ORDER

Plaintiffs Teah Averett, Cindy Malless, Eugene Parsley, Rebecca Parsley, and Crystal Whalen, on behalf of themselves and all others similarly situated, assert public nuisance, private nuisance, negligence, and gross negligence claims against Defendant Metalworking Lubricants Co. ("Metalworking") related to the alleged emission of noxious odors from Metalworking's Indianapolis facility. Plaintiffs rent or own property near Metalworking's facility, and brought this case as a putative class action on behalf of "[a]ll owner/occupants and renters of residential property residing within one and one-half (1.5) miles of the facility's property boundary." [Filing No. 8 at 7.]

On June 2, 2017, after the parties had conducted extensive discovery and participated in a private mediation, the Court granted Plaintiffs' Motion for Order Conditionally Certifying Case as a Class Action for Settlement Purposes, Appointing Class Counsel, Appointing Class Representatives, Approving Manner and Content of Notice and Preliminarily Approving Class Action Settlement. [Filing No. 84; Filing No. 85.] Specifically, the Court conditionally certified the following Settlement Class:

1

1) All owner/occupants and renters of residential property within the Class Area as defined herein…;

2) All persons who have submitted a Resident Data Sheet to Plaintiffs' Counsel…;

3) All persons included on the list of non-anonymous complainants (regarding alleged MLC Facility odors) to the Indiana Department of Environmental Management…; [and]

4) All persons included on the list of non-anonymous complainants (regarding alleged MLC Facility odors) to Citizens Energy….

[Filing No. 85 at 2.] The Settlement Class includes only individuals who fall within one of the above categories between September 25, 2009 and the Effective Date of the Settlement Agreement. [Filing No. 85 at 2.]

The Settlement Agreement requires Metalworking to pay $750,000 into a fund for the benefit of the class members. [Filing No. 84 at 14.] After attorneys' fees, costs and expenses, and a $2,000 service award for each Named Plaintiff are deducted from the $750,000, the remainder of the fund will be distributed on a pro rata basis for all class members who timely submit approved claim forms. [Filing No. 84 at 14.] Each household is limited to a $2,500 recovery under the Settlement Agreement (not including the service award for each Named Plaintiff). [Filing No 84-1 at 15.] The Settlement Agreement also requires Metalworking to "implement a minimum of $250,000 worth of physical improvement measures to its Indianapolis Facility in order to reduce the potential for odor emissions and improve the facility's environmental performance," which "includes but is not limited to the installation of a computerized monitoring system." [Filing No. 84 at 14.]

The Court preliminarily found that the terms of the Settlement Agreement are "(a) fair, reasonable, and adequate in light of the relevant factual, legal, practical, and procedural consideration of the Action, (b) free of collusion to the detriment of Class Members, and (c) within

the range of possible final judicial approval, subject to further consideration thereof at the Settlement Hearing…." [Filing No. 85 at 4.] The Court also preliminarily found that the settlement class met the requirements of Fed. R. Civ. P. 23. [Filing No. 85 at 3-4.] The Court approved the form of notice proposed by the parties, and the procedure by which notice would be given. [Filing No. 85 at 4-6.]

After administering the settlement, Plaintiffs filed an Unopposed Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, and Appointment of Class Representatives and Class Counsel, [Filing No. 89], and an Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Litigation Costs, and Service Awards for the Class Representatives, [Filing No. 90]. The Court held a hearing on the motions on September 8, 2017, [*see* Filing No. 92], and also heard argument regarding an Objection to the settlement filed by Kristine Van Pelt, [Filing No. 89-1 at 5-8]. The motions and the Objection are now ripe for the Court's decision.

## I.
### OBJECTION

On July 6, 2017, Kristine Van Pelt submitted an Objection to the settlement in which she objected to four main aspects of the settlement: (1) the amount of the settlement, including the fact that more than 45% may go to attorneys' fees, the limit of $2,500 per household, and the $2,000 service award paid to each Named Plaintiff; (2) the "improvements" part of the settlement, because all changes can be implemented within the first year, and Metalworking can afford to spend more on changes; (3) her belief that the effect on property values has not been considered; and (4) the fact that future damages may not be apparent yet, such as health problems, and that the settlement does not take into account the social impact the odor has had. [Filing No. 89-1 at 5-8.] Ms. Van

Pelt did not attend the September 8, 2017 hearing, but the Court heard argument from counsel regarding her Objection and finds that it is without merit.

First, as discussed in detail below, the Court finds that the amount of attorneys' fees requested (as adjusted below), costs, and the $2,000 service award for each Named Plaintiff are reasonable. Further, the $2,500 recovery limit per household (not including the service award for Named Plaintiffs) is reasonable. Plaintiffs' counsel clarified at the September 8, 2017 hearing that landlords who own property in the area that is included in the settlement are not class members. Counsel also confirmed that a husband and wife who live in the same household will only receive one $2,500 award. The Court finds that the $2,500 amount per household is reasonable given the risks involved for Plaintiffs in proving their case. As Plaintiffs' counsel discussed at the hearing, there was a significant risk that the class would not have ultimately been certified or that liability would have been difficult or impossible to prove, given that the Metalworking Facility is located near many other industrial facilities that could have been producing the odor instead, the odor at issue was allegedly caused by leaks rather than steady emissions so it was impossible to map out the area of emissions, and various class members had described the odor differently.

Second, the Court finds that Ms. Van Pelt's objection to the portion of the Settlement Agreement requiring Metalworking to spend $250,000 on improvements is without merit. At the September 8, 2017 hearing, counsel for Metalworking discussed improvements that Metalworking has already started to plan, and the Court also finds it particularly significant that the class members are not releasing any claims related to future emissions in the Settlement Agreement or any claims for personal injury.

Third, Plaintiffs did address the potential decreased property value of homes in the settlement area in their brief in support of their Motion for Final Approval of Class Action

Settlement, Certification of Settlement Class, and Appointment of Class Representatives and Class Counsel. [Filing No. 89 at 8.] A positive outcome at trial for Plaintiffs was not a foregone conclusion – instead, Plaintiffs faced numerous risks in obtaining class certification and in proving liability. The $2,500 per household is a reasonable result, even factoring in a potential decrease in home values. Further, the Court notes that many of the class members are renters, who would not be entitled to damages related to a decrease in the value of property that they do not own.

Finally, Ms. Van Pelt objects to the ramifications the Settlement Agreement would have on future claims related to health issues or enjoyment of property. While class members are releasing claims they have related to the use or enjoyment of their property to date, they are also receiving payment for that release. Ms. Van Pelt's remaining concerns are unfounded, because class members are not releasing any personal injury claims they may have related to the emissions to date, or any claims at all related to emissions that occur in the future.

Ms. Van Pelt's Objection, [Filing No. 89-1 at 5-8], is **OVERRULED**.

## II.
### CLASS CERTIFICATION, SETTLEMENT AGREEMENT, ATTORNEYS' FEES AND COSTS, AND SERVICE AWARD

Settlement of class claims brought under Fed. R. Civ. P. 23 may be approved if the Court finds the settlement to be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Seventh Circuit Court of Appeals has characterized the Court's role as that of a fiduciary to the class members in considering whether a settlement is fair and reasonable. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014).

On June 2, 2017, the Court conditionally certified a class for settlement purposes. [Filing No. 85.] Plaintiffs now ask the Court to grant final approval of the settlement as set forth in the Settlement Agreement; finally certify the class for settlement purposes only; finally appoint the

Named Plaintiffs as class representatives; finally appoint Plaintiffs' counsel as class counsel; grant their request for attorneys' fees to class counsel in the amount of $286,197,87; award reimbursement of litigation expenses to class counsel in the amount of $63,802.13; and grant service awards to the class representatives in the amount of $2,000 each. [Filing No. 89; Filing No. 90.]

### A. Class Certification

In order to certify a class, the Court must find that the putative class satisfies the four prerequisites set forth in Federal Rule of Civil Procedure 23(a). If the putative class does satisfy these prerequisites, the Court must additionally find that it satisfies the requirements set forth in Federal Rule of Civil Procedure 23(b), which vary depending upon which of three different types of classes is proposed.

#### 1. *Rule 23(a) Analysis*

Plaintiffs argue that their class meets all four requirements of Rule 23(a). The Supreme Court has instructed that the district court must perform a "rigorous analysis" to determine whether the prerequisites of Rule 23(a) have been satisfied because "'actual, not presumed, conformance with Rule 23(a) remains…indispensable.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (quoting *Gen. Tel. Co.*, 457 U.S. at 160). It is the plaintiffs' burden to prove first that an identifiable class exists that merits certification under Federal Rule of Civil Procedure 23(a). *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). The four prerequisites under Rule 23(a) are: "(1) [that] the class is so numerous that joinder of all its members is impracticable; (2) [that] there are questions of law or fact common to the class; (3) [that] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.

23(a). Class certification is not appropriate unless the named plaintiffs establish all four prerequisites. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982).

a. Numerosity

First, the Court finds that Plaintiffs have met the numerosity requirement. Fed. R. Civ. P. 23(a)(1). They present evidence that there are approximately 3,745 households within the class area whose residents would be class members, in addition to authors of Resident Data Sheets and other complainants. [*See* Filing No. 84-2 at 5.] Plaintiffs have satisfied their burden of showing that the class is so numerous that joinder of all members would be impracticable.

b. Common Questions of Law and Fact

Second, the Court finds that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Commonality is satisfied when there is a "common nucleus of operative fact," that is, a "common question which is at the heart of [the] case." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). All questions of fact or law need not be identical; rather the requirement is satisfied as long as the class claims arise out of the same legal or remedial theory. *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 167 (S.D. Ind. 2009). Here, the common question is whether Metalworking's alleged failure to control emissions from its Indianapolis facility is impacting air quality near class members' homes. The Class members' claims are the same, and their injuries are likely the same as well.

c. Typicality

Third, the Court finds that the Named Plaintiffs' claims are typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). The commonality and typicality requirements tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class

7

claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co.*, 457 U.S. at 158 n.13. Although typicality may exist even if there are factual distinctions between the claims of the named plaintiffs and other class members, the requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (citation omitted). The Named Plaintiffs have the same claims as the class members here – nuisance, negligence, and gross negligence – that arise from Metalworking's alleged failure to prevent emissions from reaching their homes.

d. Adequacy of Representation

Fourth, the Court finds that the Named Plaintiffs and Plaintiffs' counsel will adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). The adequacy inquiry is composed of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s] of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (citation and quotation marks omitted). To adequately represent the class, the representative plaintiffs "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citation and quotation marks omitted). The Court finds the requirement of adequacy of representation is met. The Named Plaintiffs have sufficiently demonstrated that they share the same interests and suffered the same injuries as the injuries suffered by the putative class members. Plaintiffs have also demonstrated that their counsel is competent, and has extensive experience with previous class actions of this type.

Plaintiffs have met the four prerequisites of Rule 23(a) – the class is so numerous that joinder of all its members is impracticable, there are questions of law or fact common to the class,

the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class.

### 2. *Rule 23(b) Analysis*

Finally, the Court finds that Plaintiffs have met the requirements of Rule 23(b)(3). Under Rule 23(b)(3), a class action may be maintained if the prerequisites of Rule 23(a) are satisfied and if the Court finds that the questions of law or fact common to class members predominate over any questions affecting individual class members, and that a class action is superior to other available methods of adjudicating the controversy. Courts consider:

> (A)The class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "'Considerable overlap exists between Rule 23(a)(2)'s commonality prerequisite and Rule 23(b)(3). Rule 23(a)(2) requires that common issues exist; Rule 23(b)(3) requires that they predominate.'" *Mejdreck v. Lockformer Co.*, 2002 WL 1838141, \*6 (N.D. Ill. 2002) (quoting *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F.Supp. 1399, 1419 (N.D. Ill. 1996)).

Having already found that Plaintiffs have satisfied the commonality prerequisite of Rule 23(a)(2), the Court concludes that the common questions in this case predominate over any individual questions because the class members' claims are based upon the same legal theories, and resolution of one class member's claim will resolve the claims of all class members.

**B. Fairness of Settlement Agreement and Appropriateness of Attorneys' Fees, Costs, and Service Awards**

*1. Settlement Amount*

After reviewing the Settlement Agreement and information presented regarding the administration of the settlement, and considering the information presented by counsel at the hearing, the Court finds that the settlement in this matter was reached in good faith and at arm's length, and is a reasonable compromise of the vigorously disputed issues in this case. Specifically, the Court notes the following:

- Plaintiffs' counsel was diligent and used all reasonable efforts in attempting to locate class members, and notice was effectuated by United States Mail and by publication in the Indianapolis Star;

- While the response rate to the notices that were sent to the class members was lower than a typical response rate for this type of case, this is likely due to the fact that the area covered by the Settlement Agreement includes many renters who may be transient;

- The total settlement amount paid was the result of extensive negotiations between the parties;

- The settlement amount adequately reflects both the strengths and weaknesses of the parties' positions, including strengths and weaknesses in connection with class certification issues;

- Metalworking has already started the process of making the $250,000 in improvements required by the Settlement Agreement, including searching for a company to contract with for the implementation of a computerized emission monitoring system. Because class members are not releasing claims related to future emissions from Metalworking, the company has an incentive to make these improvements;

- Significant discovery took place leading up to the settlement, and the parties participated in a private mediation;[1] and

- Only one class member filed an Objection to the settlement.

   2. *Attorneys' Fees and Costs*

As for the amount of attorneys' fees and costs requested, the Seventh Circuit Court of Appeals has instructed district courts that the "ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack*, 768 F.3d 622, 630 (7th Cir. 2014). The amount class members received does not include administrative and notice costs. *Id.* Here, the total settlement amount paid into the fund for distribution to the class is $750,000. After subtracting attorneys' fees requested ($286,197.87), litigation costs ($63,802.13), and the service awards paid to the Named Plaintiffs ($10,000), the resulting amount is $390,000. The ratio of the fee requested by Plaintiffs' counsel ($286,197.87) to the fee plus what the class members would receive ($286,197.87 + $390,000 = $676,197.87) is 42.32%. The Court finds that a ratio of 42.32% – representing the percentage of the total settlement value that the attorneys' fee request comprises – is excessive under the circumstances here. The Court notes that fee awards that yield a ratio closer to the 30% to 33% range have been found reasonable, and also that Plaintiffs and class counsel entered into a fee agreement in this case which entitled counsel to one-third of any settlement. *See, e.g., Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot.*

---

[1] The Court notes that Plaintiffs' counsel spent 666.8 hours total on this case. [Filing No. 90 at 7.] Of that time, 590.5 hours were spent before the mediation. [Filing No. 91.] The Court finds this significant because it indicates that counsel spent a significant percentage of the total time spent on this case engaging in discovery and assessing the strengths and weaknesses of Plaintiffs' case in preparation for the mediation – as opposed to possibly artificially racking up fees after it became apparent that settlement was the right course of action.

11

*Act Litig.), 80 F.Supp.3d 781, 804 (N.D. Ill. 2015) (finding after an extensive and instructive discussion that the market rate for attorneys' fees in class actions brought under the Telephone Consumer Protection Act reflects 30% of the award to class members when the award is less than $10 million).

If the Court were to consider the full "value" of the settlement by including the $250,000 in improvements, as Plaintiffs argue it should, then the ratio would be closer to 30%. With a total settlement of $1,000,000, after subtracting attorneys' fees requested ($286,197.87), litigation costs ($63,802.13), and the service awards paid to the named Plaintiffs ($10,000), the resulting amount is $640,000. The ratio of the fee requested by Plaintiffs' counsel ($286,197.87) to the fee plus what the class members would receive ($286,197.87 + $640,000) is 30.90%. The problem with using the higher $1,000,000 figure, however, is that the class members bear all the risk of ever benefitting from this amount, while Plaintiffs' counsel would receive their fee award up front regardless of whether the $250,000 in improvements were ever made. This situation is somewhat unique, and the Court finds it unfair to place all of the risk on the class. *Wong*, 773 F.3d at 862 ("In the past we have gone so far as to characterize the court's role as akin to the high duty of care that the law requires of fiduciaries").

Instead, the Court finds it appropriate to immediately award attorneys' fees of $223,145.29, which would yield a ratio of the fees requested by Plaintiffs' counsel to the fees plus what the class members would receive of 33% (using $750,000 as the settlement amount). The Court will retain the remainder of the attorneys' fees requested and require Plaintiffs' counsel and Metalworking to report to the Court every six months regarding what portion of the $250,000 in improvements have been made. The remainder of the attorneys' fees ($63,052.58) shall be paid by Metalworking to the Court, and will be held by the Court in an interest-bearing account. A prorated share of the

retained fees will be released to Plaintiffs' counsel as improvements by Metalworking are made. For example, if Metalworking makes improvements of $50,000, then 20% of the retained fees ($50,000/$250,000) will be released to Plaintiff's counsel. Awarding $223,145.29 in attorneys' fees now and retaining the remainder of the attorneys' fees requested is also consistent with the fee agreement entered into by Plaintiffs and counsel, which entitled Plaintiffs' counsel to receive one-third of any settlement amount. The Court will also award the $63,802.13 in costs.

### 3. Service Award to Named Plaintiffs

The Court further finds that a service award of $2,000 to each Named Plaintiff is reasonable. By all accounts, Ms. Averett, Ms. Malless, Mr. Parsley, Ms. Parsley, and Ms. Whalen were involved in the litigation – meeting with counsel and sitting for depositions. The $2,000 award is well within the reasonable range in this type of case. *See, e.g.*, *Cook v. Neidert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming service award of $25,000 to named plaintiff). Additionally, the Named Plaintiffs' participation resulted in a favorable settlement for class members. *Id.* ("In deciding whether [a service award] is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation").

Based on the foregoing, the Court finds that $223,145.29 in attorneys' fees, $63,802.13 in costs, and $2,000 service awards each to Ms. Averett, Ms. Malless, Mr. Parsley, Ms. Parsley, and Ms. Whalen for serving as the class representatives are reasonable taking into account the circumstances of the case and the relevant ratio.

## III.
### CONCLUSION

In sum, the Court **OVERRULES** Ms. Van Pelt's Objection to the class action settlement, and **GRANTS** Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement,

Certification of Settlement Class, and Appointment of Class Representatives and Class Counsel, [Filing No. 89], and Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Litigation Costs, and Service Awards for the Class Representatives, [Filing No. 90], to the extent that the Court:

- **FINALLY APPROVES** the Settlement Agreement;

- **FINALLY CERTIFIES** the class defined above;

- **APPOINTS** the Named Plaintiffs as class representatives;

- **APPOINTS** Liddle & Dubin, P.C. and Yosha, Cook and Tisch as class counsel; and

- **AWARDS** $223,145.29 in attorneys' fees and $63,802.13 in costs, and a service award of $2,000 for each Named Plaintiff, all to be paid from the $750,000 settlement fund. The remainder of the attorneys' fees ($63,052.58) shall be paid by Metalworking to the Court, and will be held by the Court in an interest-bearing account. Plaintiffs' counsel may seek a pro rata share of the remainder of the attorneys' fees requested by reporting to the Court every six months for the next five years as Metalworking expends the $250,000 to improve emissions at its Indianapolis Facility. Should Plaintiffs' counsel fail to file reports, or otherwise seek the remaining attorneys' fees, they will be turned over to Concord Neighborhood Center, the organization designated by the parties in the Settlement Agreement to receive residual amounts, five years from today's date.

This matter is **DISMISSED WITH PREJUDICE** and without fees, costs or disbursements to any party, except as provided in the Settlement Agreement and this Order as to Plaintiffs' counsel's fees and costs and the service awards to the Named Plaintiffs. Final judgment shall enter accordingly.

Date: 9/27/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

Kristine Van Pelt
935 E. Raymond St.
Indianapolis, IN 46203